28 N.J. Super. 500 (1953)
101 A.2d 56
DOROTHY BRENDEL, ET AL., PLAINTIFFS-RESPONDENTS,
v.
PUBLIC SERVICE ELECTRIC AND GAS COMPANY, ETC., ET AL., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 23, 1953.
Decided December 4, 1953.
*502 Before Judges CLAPP, GOLDMANN and EWART.
*503 Mr. Raymond C. Connell argued the cause for appellants (Mr. Luke A. Kiernan, Jr., attorney).
Mr. William F. McCloskey argued the cause for respondents.
The opinion of the court was delivered by EWART, J.A.D.
Defendants appeal from a final judgment entered against them in the Superior Court, Law Division, based on the verdict of a jury, and from an order by the trial court denying defendants' motion for a new trial.
This suit arose out of a collision between two automobiles at a street intersection in New Brunswick, New Jersey, on April 2, 1952. Plaintiff Dorothy Brendel, accompanied by her four infant children, viz., James, age 7, Ronald, age 6, Kathleen, age 4, and George, Jr., age 9 months, was driving the automobile of her husband, the plaintiff George Brendel, northwestwardly (designated in the proofs as northwardly) on Suydam Street at about 12:20 P.M. on the date mentioned. The weather was clear, the street dry, and the visibility good.
At the same time defendant George D. Ivins, an employee of the corporate defendant, was driving a light truck with a closed panel body southwestwardly (designated in the proofs as westwardly) on Codwise Avenue. The streets intersect at right angles. Suydam Street is a so-called "thru" street of a width of 47.7 feet between curbs and Codwise Avenue is a so-called "stop street" with a width of 36 feet between curbs. There is a stop sign erected on the northerly side of Codwise Avenue, adjacent to the curb, and approximately 33 feet east of the easterly curb line on Suydam Street. Drift Street, running nearly parallel to Codwise Avenue, intersects Suydam Street to the south of Codwise Avenue, it being approximately 88 feet measured along the easterly curb line of Suydam Street from the southerly curb line of Codwise Avenue to the northerly curb line of Drift Street. There is a gasoline station hereinafter mentioned located on the northwesterly corner of the intersection and at the *504 southeasterly corner of the intersection there is located a building, two or more stories in height, which comes out nearly to the sidewalk and offers some interference with the view to the south on Suydam Street of one driving westwardly on Codwise Avenue approaching the said intersection.
The two automobiles collided in the intersection, the front of the Brendel car having struck the left side of defendants' truck at a point back of the front door giving access to the driver's seat and in front of the rear wheel of the truck. The collision occurred somewhat to the right of the center line of Codwise Avenue and likewise to the right of the center line of Suydam Street at a point marked by the plaintiff Dorothy Brendel on a map admitted in evidence and marked Exhibit P-1, which point is approximately 16 feet west of the easterly curb line of Suydam Street. Another witness, Officer Haskins, marked on said map the point of collision as being approximately 19 feet west of said curb line. And according to the testimony of the defendant Ivins, the collision occurred at about the time the rear wheel of his truck was over a manhole which is located approximately in the middle of Suydam Street and which would be a few feet farther to the west than the points indicated by the plaintiff Dorothy Brendel and by Officer Haskins. After the initial collision, the two cars described an ark and came to a stop with the truck up against the curb at the northwesterly corner of the intersection adjacent to the gasoline station and with the front of plaintiff's automobile pressed against the left side of the truck. Neither car upset.
Suit was instituted against both George D. Ivins, driver of the truck, and Public Service Electric and Gas Co., his employer, by Dorothy Brendel as plaintiff, who sought to recover for personal injuries, pain and suffering, etc.; on behalf of the infant Kathleen Brendel, plaintiff, to recover for injuries; on behalf of the infant James Brendel, plaintiff, to recover for injuries; and by George Brendel, plaintiff, husband of the plaintiff Dorothy, to recover for expenses incurred for medical attention, hospitalization, etc., for his wife and children, for the cost of employing domestic help *505 while his wife was incapacitated, for loss of his wife's services and for damage to his automobile.
The case was tried at New Brunswick before the court and a jury and resulted in a verdict against both defendants in favor of Dorothy Brendel for $4,000, in favor of George Brendel, her husband, for $1,479, and verdicts of no cause for action in favor of the defendants and against the infant plaintiffs Kathleen Brendel and James Brendel. Also a verdict of no cause for action upon a counterclaim of the defendants against George and Dorothy Brendel.
After the verdicts defendants moved for a new trial on the grounds that: (1) the verdicts in favor of the plaintiffs Dorothy and George Brendel were against the weight of the evidence, (2) the verdicts were for excessive amounts, (3) the verdicts in favor of the plaintiffs Dorothy and George Brendel were the result of mistake, partiality, prejudice and passion, (4) the verdicts in favor of plaintiffs Dorothy and George Brendel were contrary to the charge of the court, and (5) the verdicts rendered by the jury were inconsistent and irreconcilable. The motion was duly argued and resulted in the entry of an order denying the motion for the reasons set forth in a memorandum filed by Judge Kalteissen.
On this appeal defendants argue the following reasons for reversal of the judgments: (1) that the verdicts were irreconcilable and inconsistent, (2) that the verdicts rendered in favor of Dorothy and George Brendel were against the weight of the evidence, (3) that the verdicts rendered were contrary to the charge of the court, and (4) that the trial court committed error in denying defendants' motion for a new trial. We deal with points argued by defendants in the order above set forth.
First: That the verdicts were irreconcilable and inconsistent. Under this point defendants argue that the finding of the jury in favor of Dorothy Brendel was tantamount to a conclusion that the defendants were guilty of negligence which was the proximate cause of the accident and that the plaintiff Dorothy Brendel was free of contributory negligence, and that this being so, a verdict in favor of Dorothy *506 Brendel, the driver of the car, was entirely inconsistent and irreconcilable with verdicts in favor of the defendants and against the infant passengers, Kathleen and James Brendel. In support of that argument, defendants cite the following cases: Doherty v. Boyajian, 9 N.J. Misc. 263 (Sup. Ct. 1931); Lanning v. Trenton, etc., Traction Corp., 3 N.J. Misc. 1006 (Sup. Ct. 1925); Rich v. Central Electrotype Foundry Corp., 121 N.J.L. 481 (Sup. Ct. 1939); Ruby v. Quotidian, 14 N.J. Misc. 227 (Sup. Ct. 1936); Henderson v. Abbotts Alderney Dairies, 7 N.J. Misc. 454 (Sup. Ct. 1929); Swiencicki v. Wieczerzak, 6 N.J. Misc. 145 (Sup. Ct. 1928); and the recent case of Watkins v. Myers, 12 N.J. 71, 95 A.2d 705 (1953).
In six of these seven cases, the verdicts were set aside as inconsistent and irreconcilable. In five of the six cases cited, a married woman had filed suit to recover for personal injuries and the husband joined as plaintiff to recover expenses incurred by reason of his wife's injuries and for loss of the wife's services, and in each of the five cases the verdict was in favor of the wife but a no cause of action verdict as to the husband.
In the Doherty case, supra, the infant plaintiff was a passenger in an automobile driven by her father. There was a collision with another automobile at a street intersection in which both the father and daughter were injured. In a suit by the father and daughter to recover for injuries, etc., the jury returned a verdict in favor of the father, who was the driver of the automobile, and of no cause for action as against his infant daughter. The court set aside these verdicts on the ground that they were irreconcilable and demonstrated the unfitness of the jury to determine the rights and obligations of the respective parties.
In the Rich case, supra, the infant plaintiff was a passenger in an automobile and suffered serious injuries as the result of a collision at a street intersection between the car in which she was a passenger and another automobile. Suit was brought against the operator of both the car in which the infant plaintiff was a passenger and against the operator *507 of the other automobile involved in the collision. The infant's father joined in the suit to recover for medical and incidental expenses incurred on behalf of his daughter and the jury returned a verdict for $10,000 in favor of the infant and of no cause for action as to the father's claim. On defendant's rule to show cause it was urged that the verdicts were inconsistent and should be set aside. Justice Perskie, speaking for the Supreme Court, refused to do so and discharged the rule. In that particular case it appeared at the trial that the injured infant's father was a practicing physician; that the infant was treated by another physician, a Dr. Grecca; that by reason of professional courtesy extended by one physician to another, Dr. Grecca had testified that he would make no charge for his services unless the father recovered a verdict, in which event he would charge a fee of $200. The trial judge (the late Judge Lawrence) left it to the jury to decide as to whether or not there should be a verdict for the father's expenses. It appeared that any other expenses incurred by the father were trivial. There had been no requests to charge on the subject. Judge Perskie refused to disturb the verdict and mentioned in passing that, in addition to the circumstances set forth above, the father would be the only one injured by the verdict and he was not complaining.
It is, of course, well settled that inconsistent and irreconcilable verdicts are fatally defective and should normally be set aside. The grounds customarily assigned as the reason therefor is that the jury failed to comprehend the issues involved in the trial and, by their verdicts, demonstrated their unfitness to determine the rights and obligations of the respective parties.
In the case at bar the injuries suffered by the infants Kathleen and James Brendel were quite slight. Dr. Benjamin F. Glasser treated both infants. He testified with respect to the injuries suffered by Kathleen:
"We made a diagnosis of contusion of the scalp, with ecchymosis; we saw her only twice, and she did so well that we discharged her."
*508 He saw her on only two occasions and testified there was no permanent injury whatsoever and he rendered her father a bill for $9 which apparently was included in the verdict awarded her father by the jury.
With respect to the infant James Brendel the doctor testified as follows:
"Q. Did you also see James Brendel? A. Yes, we did. His situation was a little confusing to us. He had swelling of the jaw at the time; painful. And he also had some dental situation. We were not certain of ourselves. However, we gave him the benefit of some penicillin. He was treated three times and discharged.
Q. So aside from that period of time he was cured? A. No permanent disability."
The doctor made a charge of $13 for his services to James, and that amount was apparently included in the verdict awarded the boy's father by the jury. With respect to the injuries suffered by the infant James, on cross-examination the doctor testified that James had some confusing situation of his jaw; that the diagnosis was probable traumatic injury, probable abscessed tooth. "We weren't sure of it ourselves." And that his difficulty could have been the result of a tooth condition.
No doubt under these proofs the jury would have been justified in rendering small or nominal verdicts in favor of each of these two children who received slight injuries. The trial court, in its charge to the jury, referred to the injuries suffered by the two children as "minor injuries." The defendants, of course, are not in a position to complain on behalf of the infant plaintiffs. However, they seize upon the rule that inconsistent verdicts should be set aside and seek to turn the same to their own advantage by having the verdicts in favor of Dorothy Brendel and George Brendel, her husband, also set aside. In Watkins v. Myers, supra, where a somewhat similar problem was involved, the Supreme Court remarked that two things are necessary to support a verdict in favor of a plaintiff in a negligence suit, namely, proof of negligence on the part of *509 the defendant and proof of a compensable injury suffered by plaintiff. In that case, it appeared that the plaintiff Beatrice Michie had suffered a very slight injury and while the jury had found the defendant guilty of negligence with respect to another plaintiff who suffered a more serious injury in the same accident, the court found little substance to the argument that the verdicts of the jury were inconsistent because of its failure to render a verdict in favor of the plaintiff Beatrice Michie whose injury was very slight. By a parity of reasoning we think it may be said in the case at bar that the injuries suffered by these children were so slight as to make the question almost academic and that the failure of the jury to return verdicts in their favor was justified under the circumstances.
Judge Kalteissen, in denying defendants' motion for a new trial because of the alleged inconsistency in the verdicts, dealt with this subject as follows:
"The jury evidently felt that disbursements incident to the children's injuries were brought about more as a matter of precaution than of treatment. They evidently felt that the two children suffered no compensable injuries, and that they were not entitled to any amounts for pain and suffering, but that the bills incident to their examination or treatment should be paid, so they properly included them in their guardian ad litem's verdict, in effect, giving the two minors a verdict in the only manner that they could after they determined that they were not entitled to anything for pain and suffering. The testimony definitely indicated that so far as the minors were concerned, outside of some discoloration, there were absolutely no abnormalities of any kind, and the jury evidently felt therefore, that they were not entitled to any amount for pain and suffering, and that they suffered no compensable injury."
Furthermore, as indicated above, we do not think the defendants are in any position to complain on behalf of these children. Dumphy v. Thompson, 3 N.J. Misc. 1086 (Sup. Ct. 1925); Windisch v. Comerford Constr. Co., 8 N.J. Misc. 70 (Sup. Ct. 1930); Rich v. Central Electrotype Foundry Corp., supra.
In the Dumphy case, supra, a two-year-old infant was a passenger involved in an automobile accident. She was joined *510 as a plaintiff along with other passengers in a subsequent suit. The jury returned verdicts in favor of the adult passengers, but a no cause of action as to the infant plaintiff. Defendant sought to have the verdicts set aside as inconsistent. The Supreme Court found no merit in the defendant's contention; held that the proofs showed the infant was unharmed; and remarked:
"It might very well be that she was entitled to a nominal verdict of 6 cents, and this might have furnished a good ground for an application in her behalf to have the verdict set aside as against her. We cannot perceive on what legal principle the defendant can avail herself of the failure of the jury to find a verdict in favor of the infant, and for that reason be entitled to have the verdict in favor of the plaintiffs set aside."
In the Windisch case, supra, a married woman brought suit to recover damages for injuries suffered when she stepped into a hole in a highway, made by a contractor who had the road under repair, resulting in a fall and injuries to the plaintiff. Her husband joined in the suit to recover for loss of services, etc. The jury brought in a $5,000 verdict in favor of the wife and a no cause of action verdict as to the husband. On a rule to show cause defendant sought to have the verdict set aside as inconsistent because the jury failed to return a verdict in favor of the husband, but the Supreme Court refused to do so, discharged the rule and held as follows:
"Of this the defendant may not complain, and it affords no ground at its hands upon which the verdict in favor of the wife may be set aside."
We can see no merit in the defendants' argument on this point. We think it cannot be said in this particular case that the failure of the jury to return verdicts in favor of the infant plaintiffs shows a failure on the part of the jury to comprehend the issues involved in the trial or demonstrates the unfitness of the jury to pass upon the rights and obligations of the respective parties to the suit.
*511 Second: That the verdicts rendered in favor of Dorothy and George Brendel were against the weight of the evidence. Plaintiffs' suit was predicated upon the alleged negligence of defendants. And defendants pleaded, inter alia, contributory negligence of the plaintiff Dorothy Brendel.
It is well settled that the existence of negligence and contributory negligence are pre-eminently questions of fact for the jury. Shappell v. Apex Express Co., 131 N.J.L. 583 (E. & A. 1944); Gentile v. Public Service, etc., Co., 12 N.J. Super. 45 (App. Div. 1951).
And it is equally well settled that the court may not set aside a verdict merely because in its opinion the jury upon the evidence might well have found otherwise. The appellate tribunal cannot invade the constitutional office of the jury; it may not merely weigh the evidence where it is fairly susceptible of divergent inferences and substitute its own judgment for that of the jury. But, of course, if the verdict be so far contrary to the weight of the evidence as to give rise to the inescapable conclusion of mistake, passion, prejudice or partiality, such verdict cannot support the judgment and the appellate tribunal has the right to correct such an error. Hager v. Weber, 7 N.J. 201, 210 and 211 (1951).
In the recent case of Hartpence v. Grouleff, 28 N.J. Super. 125 (App. Div. 1953), the court, with appropriate citation of authorities on this subject of setting aside finding of a jury, remarked:
"The cases have added to this (rule) the requirement that the court should not interfere unless there is an irresistible inference of mistake, passion, prejudice or partiality, or an inescapable conclusion thereof."
In addition to the facts recited above concerning the occurrence of the collision between the two automobiles in this case, and which facts are not disputed, an examination of the testimony adduced on behalf of the respective contestants in this suit reveals that according to the testimony of the defendant Ivins he brought his truck to a stop at the stop sign on Codwise Avenue, which is about 33 feet east *512 of the easterly curb line of Suydam Street; he then shifted gears and proceeded westwardly across the intersection without, however, having brought his car to a stop within five feet of the nearest crosswalk, as required by the Traffic Act, R.S. 39:4-144; after he moved out to the curb line on the east side of Suydam Street he observed the Brendel car approaching the intersection from the south coming across Drift Street (about 88 feet distant), and he did not look again at the approaching Brendel car until just before the collision and too late to avoid an accident. And on cross-examination he testified as follows:
"Q. And then you say the next observation you made was when you were in the intersection? A. When she hit me.
Q. In other words, you did not make any observation between that time and the time approximately when you were struck? A. I don't get that question.
Q. Well, the next time you saw her she was right on top of you, about to hit you? A. Yes."
On the other hand, the plaintiff Dorothy Brendel testified that she was proceeding northwardly on Suydam Street at a speed of about 20 to 25 miles per hour; that the truck shot out right in front of her without having stopped before entering the intersection; that the truck was going fast; that she was midway between Drift Street and Codwise Avenue when the truck came out; and that she applied her brakes and attempted to swerve her car to the left, but that it was too late to avoid an accident. She also testified that she had not reduced her speed until she applied her brakes just before the collision occurred.
Officer Haskins, called as a witness for defendants, testified on direct examination to a conversation had with the plaintiff Dorothy Brendel at the hospital right after the accident in which she told him:
"When she arrived at that intersection. She told me that she looked to the left and right, and she saw this truck shoot out in front of her, and he was going so fast that it was impossible for her to avoid hitting it."
*513 And further she told the officer:
"She said he ran through the stop street sign."
From this state of the proofs we cannot say that the verdict was so far contrary to the weight of the evidence as to give rise to the inescapable conclusion that the verdict was the product of mistake, passion, prejudice or partiality. Hager v. Weber, supra; Hartpence v. Grouleff, supra. To set aside the verdict in this case, we should have to weigh the evidence and substitute our own judgment for that of the jury and this we are not permitted to do.
There was a conflict between the testimony given on behalf of the plaintiff and that adduced on behalf of defendants with respect to the cause of the accident. Various inferences might be drawn therefrom, depending upon which witnesses the jury believed. Under the provisions of R.R. 1:5-3, made applicable to the Appellate Division by R.R. 2:5, we are not persuaded by defendants' argument that "it clearly and convincingly appears that the verdict was the result of mistake, partiality, prejudice or passion."
Third: That the verdicts rendered were contrary to the charge of the court. Under this point defendants cite various portions of the trial court's charge, including (a) the charge on the subject of contributory negligence of plaintiffs, (b) that if the jury should find the plaintiffs were entitled to a verdict, there should be a separate verdict for each of the two infant children who received minor injuries, and (c) the provisions of the Traffic Act, R.S. 39:4-90, relating to the rights and duties of drivers of vehicles approaching point of intersection of two streets, etc. Defendants urge that the verdicts rendered show that the jury disregarded the court's charge in the respects mentioned and evidence a dereliction of duty on the part of the jury.
A reading of the court's charge to the jury reveals that the court charged fully with respect to the subject of negligence charged against the defendants and contributory negligence charged against the plaintiffs; charged fully, in *514 accordance with the request of counsel, with respect to the provisions of the Traffic Act governing the situation presented by the evidence, but left it to the jury, and properly so, under the conflicting proofs adduced, to determine whose fault was the proximate cause of the accident. We find no merit in defendants' argument that the verdicts returned by the jury were contrary to the charge of the court.
Fourth: That the court below erred in denying the defendants' motion for a new trial. Under this point defendants argue, without citation of authorities, that the trial court should have granted their motion to set aside the verdicts and for a new trial upon the five grounds mentioned above and that the refusal of the trial court so to do constituted reversible error.
A motion for a new trial is addressed to the discretionary power of the trial judge to be exercised by him, not according to whim or caprice, but by a sound application of rules of law governing the subject. Minter v. Bendix Aviation Corp., 26 N.J. Super. 268, 271 (App. Div. 1953). Once such discretion is exercised by the trial judge, it may not be disturbed on appeal unless, after giving heed to the limitations imposed by R.R. 1:5-3(a), it clearly appears to have been arbitrary. Amado v. Malibu Dude Ranch, 26 N.J. Super. 445, at 449 (App. Div. 1953). And where the application for a new trial is based upon the allegation of excessive damages in tort actions, and the damages cannot be gauged by fixed standards, but necessarily rest in the sound discretion of the jury, the court interferes with the verdict with reluctance and never except in a clear case. In an application for a new trial based upon such a ground, it is necessary for the court to enter into the nature of the cause, the evidence and the facts, the circumstances and situation of the parties in the same manner as the jury does. Salvato v. N.J. Asphalt & Paving Co., 135 N.J.L. 185, 189 (E. & A. 1946).
In this case on defendants' application for a new trial, the trial judge has filed a memorandum denying the motion in which he reviews the conflicting proofs; exhibits *515 a thoughtful consideration of the whole matter; and the memorandum evidences a careful and proper exercise of judicial discretion on the part of the trial court. We cannot say that the determination of the trial court in denying defendants' motion for a new trial exhibits to any degree failure to exercise a judicial discretion or evidence that it was exercised in a capricious or arbitrary manner.
Finding no error, the judgments appealed from are affirmed.