No. 82–130. LAWRENCE ET AL. *v.* BAUER PUBLISHING & PRINTING LTD. ET AL. Sup. Ct. N. J. Certiorari denied.

JUSTICE REHNQUIST, dissenting.

Because of the New Jersey Supreme Court's decision in this case, "[t]wo highly motivated senior citizens are left without redress for libelous publications holding them up to contempt and ridicule in the community in which they have lived for many years. This is the result of their sincere attempt to participate in local government." 89 N. J. 451, 446 A. 2d 469 (1982) (Schreiber, J., dissenting). Because I think that the decision of the Supreme Court of New Jersey was based on an erroneous belief that the First and Fourteenth Amendments to the United States Constitution required it, notwithstanding society's "pervasive and strong interest in preventing and redressing attacks upon reputation," *Rosenblatt* v. *Baer*, 383 U. S. 75, 86 (1966), I dissent from the denial of certiorari.

Petitioners, Lawrence and Simpson, were officers of a citizens group called Rahway Taxpayers Association. In 1974, the Association began a petition drive seeking a public referendum on plans to construct a new municipal firehouse. In late December 1974, petitions containing over 5,000 signatures were submitted to the Rahway City Clerk. On January 9, 1975, the Rahway News-Record, a newspaper owned and operated by respondents, printed the following headline across the top of its front page: "City Attorney rules association petitions improper; forgery charges may loom for Lawrence, Simpson." The accompanying article stated in pertinent part:

> "In separate actions city attorney Alan Karcher ruled the petitions filed by the officials of the Rahway Taxpayers Association are improper and attorney Theodore J. Romankow was asked to take action by city officials against association leaders because of 'irregularities' in the petitions.
>
> "The Rahway News-Record learned Mr. Romankow was empowered to handle a case against Alonzo W. Lawrence, president of the Association, and James Simpson, the group's secretary-treasurer.
>
> "The case would be based on charges that forgery was involved in the gathering of approximately 5,000 signatures which the two men filed with the city clerk Robert W. Schrof on December 27, the News-Record was told.
>
> "In connection with this the men would also be charged with false swearing of oaths and affidavits, it was asserted." 89 N. J., at 456, 446 A. 2d, at 471.

In response to petitioners' request that the News-Record retract these allegations, the newspaper ran a second front-page story on April 17, 1975. The headline read: "News-Record asked to retract article on firehouse battle." Rather than give a retraction, the newspaper proceeded to reiterate and defend its earlier story claiming that the story was based

on information provided by "a source in the [city] administration." *Id.*, at 456, 446 A. 2d, at 471.

Petitioners brought this libel action, alleging they had been defamed by both of the stories. The trial court ruled that Simpson was not a public figure and allowed his case to go to the jury without instructions on *New York Times Co.* v. *Sullivan*, 376 U. S. 254 (1964), "actual malice." The jury returned a verdict for Simpson in the amount of $22,500. The trial court ruled that Lawrence was a public figure, and in the first instance ruled that there was insufficient evidence for Lawrence to get to the jury on the *New York Times* "actual malice" issue. Subsequently, the trial court reversed itself on the latter finding and granted Lawrence's motion for a new trial. The New Jersey Supreme Court reversed, holding that both Simpson and Lawrence were "public figures" as defined by *Gertz* v. *Robert Welch, Inc.*, 418 U. S. 323 (1974), and its progeny, and that "the evidence in the record is 'constitutionally insufficient' to present a jury question of actual malice." 89 N. J., at 468, 446 A. 2d, at 478.

In reaching its conclusion that no jury question was presented, the New Jersey court set out the "actual malice" standard as defined by this Court in *New York Times Co.* v. *Sullivan*, *supra*, and succeeding cases. The court prefaced its discussion of the facts by saying: "In light of this stringent standard we have carefully examined the record below to determine whether the evidence at trial was sufficient to present a jury question as to actual malice. That examination reveals that there was insufficient evidence of actual malice toward either plaintiff." 89 N. J., at 467, 469 A. 2d, at 477.

The court then proceeded to review the facts of the case *de novo*. The testimony indicated that the newspaper's sole source for the first story was Joseph Hartnett, a recent appointee as City Business Administrator. Hartnett had no official duties in connection with the filing of the petitions. Hartnett testified that he had informed an editor and re-

porter for the News-Record that there was an investigation concerning some signatures on the petitions, but he maintained repeatedly that he had never linked petitioners with the investigation. Hartnett further stated that the forgery claims concerned such instances as a husband signing a petition for his wife or vice versa and that the false swearing claims concerned the formalities of the affidavits submitted by the persons circulating the petitions. The News-Record editor and reporter testified that the information given by Hartnett was identical to that printed in its news stories, *i. e.*, that petitioners were under investigation for forgery and false swearing.

On the basis of its *de novo* review of these facts, the New Jersey court said:

"Here, defendants honestly believed that the concededly misleading statements published in the two articles were true. Their misconceptions arose primarily from their conversation with Hartnett in which he told them that the petitions were under investigation for possible evidence of false swearing and forgery. . . . Neither 'errors of interpretation of judgment' nor 'misconceptions' are sufficient to create a jury issue of actual malice under the *New York Times* standard. See *Time, Inc.* v. *Pape*, 401 U. S. 279, 290 [1971] . . . . There is not 'clear and convincing' evidence that defendants *knew* that the defamatory publications were false, or that they *actually* doubted their accuracy. [Citation omitted.] Rather, . . . defendants published a careless and perhaps irresponsible account of the information received concerning the scope of the City Attorney's investigation. But the evidence in the record is 'constitutionally insufficient' to present a jury question of actual malice. See *New York Times* [*Co.* v. *Sullivan*, 376 U. S., at 288]." *Id.*, at 467–468, 446 A. 2d, at 477–478.

My cursory examination of New Jersey precedents suggests to me that New Jersey follows the rule adhered to in almost

all of the States with respect to the ruling of a trial court on a motion for directed verdict. "[T]he trial court cannot weigh the evidence but *must accept as true* all evidence which supports the view of the party against whom the motion is made and must give him the benefit of all legitimate inferences which are to be drawn therefrom in his favor." *Wilson* v. *Savino*, 10 N. J. 11, 18, 89 A. 2d 399, 402–403 (1952). In reviewing a jury verdict on appeal, the New Jersey courts have held that "it is equally well settled that the court may not set aside a verdict merely because in its opinion the jury upon the evidence might well have found otherwise. The appellate tribunal cannot invade the constitutional office of the jury; it may not merely weigh the evidence where it is fairly susceptible of divergent inferences and substitute its own judgment for that of the jury." *Brendel* v. *Public Service Electric and Gas Co.*, 28 N. J. Super. 500, 511, 101 A. 2d 56, 61–62 (1953). It seems to me inescapable that the New Jersey Supreme Court in this case felt bound by some invisible radiations from *New York Times Co.* v. *Sullivan* to reweigh for itself the credibility of interested witnesses who might have been wholly disbelieved by a jury. The above quotation from the New Jersey court's opinion indicates that it felt required to credit the testimony of the defendant's witnesses, all of whom were interested in the outcome of the lawsuit.

That there are no such "invisible radiations" from *New York Times Co.* v. *Sullivan* is established by our decision in *Hutchinson* v. *Proxmire*, 443 U. S. 111 (1979). There we said that "[t]he proof of 'actual malice' calls a defendant's state of mind into question . . . and does not readily lend itself to summary disposition." *Id.*, at 120, n. 9. This view was stated another way in *St. Amant* v. *Thompson*, 390 U. S. 727 (1968):

"The defendant in a defamation action . . . cannot, however, automatically insure a favorable verdict by testifying that he published with a belief that the statements were true. The finder of fact must determine

whether the publication was indeed made in good faith." *Id.*, at 732.

Although post-*New York Times Co.* v. *Sullivan* decisions from this Court therefore confirm the principle that the jury is to be the judge of the credibility of the witnesses in libel cases as in other lawsuits, it seems clear that the Supreme Court of New Jersey did not follow this principle. There were sharp conflicts in the testimony respecting crucial events in the lawsuit. Hartnett, the City Business Administrator, testified he did not tell the News-Record that petitioners were under investigation. If he is to be believed, then the News-Record, which asserted that Hartnett was their only source, had no basis for stating that petitioners were targets of such an investigation and implying that petitioners were guilty of forgery and false swearing. That the newspaper's editor testified that he "believed" that the stories were true may give the jury additional basis for finding for the defendant, but his testimony does not require any such result as a matter of federal law. The jury as a matter of federal law is at liberty to totally disbelieve him, or to find that his belief was not reasonably justified. *St. Amant* v. *Thompson, supra.*

Repeated citations in the opinion of the Supreme Court of New Jersey to this Court's decisions following *New York Times Co.* v. *Sullivan* satisfy me that the court is under the impression that as a matter of federal constitutional law it is required to reweigh testimony and reassess the credibility of witnesses in a trial for libel or slander. At the very least, we have jurisdiction on the basis set forth in *Zacchini* v. *Scripps-Howard Broadcasting Co.*, 433 U. S. 562, 568 (1977), and I would exercise that jurisdiction by granting the petition for certiorari.