244 N.J. Super. 466 (1990)
582 A.2d 1039
HAROLD J. CASSIDY, ESQ., ROGER J. FOSS, ESQ., AND PHILLIP E. SAN FILIPPO, ESQ., INDIVIDUALLY AND D/B/A CASSIDY, FOSS & SAN FILIPPO, ESQS., PLAINTIFFS-RESPONDENTS,
v.
KENNETH D. MERIN, NEW JERSEY COMMISSIONER OF INSURANCE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 1, 1990.
Decided November 27, 1990.
*469 Before Judges PETRELLA, MUIR, Jr. and BROCHIN.
Stephen P. Tasy, Deputy Attorney General, argued the cause for appellant (Robert J. Del Tufo, Attorney General of New Jersey, attorney; Michael R. Clancy, Assistant Attorney General, of counsel, Stephen P. Tasy, on the brief).
Steven L. Kessel argued the cause for respondents (Drazin and Warshaw, attorneys; Steven L. Kessel, on the brief).
The opinion of the court was delivered by BROCHIN, J.A.D.
One of the 1988 legislative amendments to our no-fault automobile insurance law required automobile liability insurers to offer their insureds two alternative coverage options. One option barred an insured from recovery for "non-economic loss" that resulted from an automobile accident unless the insured had "sustained a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute that person's usual and customary daily activities...." N.J.S.A. 39:6A-8(a). The other option imposed no limitation on the insured's right to recover for non-economic loss. N.J.S.A. 39:6A-8(b).
When the legislation which prescribed these options was enacted, defendant, Kenneth D. Merin, was the State Commissioner of Insurance. He publicly urged consumers to select the coverage option which would curtail their right to sue for *470 non-economic losses. Various other groups and individuals also publicly expressed their views, urging selection of one or the other of the options.
Plaintiffs are New Jersey attorneys who were among those attempting to influence public opinion on the choice of coverage. With that objective, they circulated letters to their clients and others urging selection of the insurance coverage option which would not limit suit for "non-economic loss." In the letters which plaintiffs circulated, they wrote:
Because of recent changes in the law passed in August, 1988, we no longer believe our clients can rely upon the agent through whom they buy insurance to obtain a meaningful explanation of the purchase of certain options.
Under the new law, insurance agents have been granted immunity from their own negligence in providing you with services. The significance of this immunity, we feel, will encourage some agents to be less diligent than they used to be in explaining your rights to you. Under the new law, if a purchaser of insurance does not specifically request the insurance option which does not extend immunity to negligent drivers who injure them, the purchaser will be given coverage which extends significant immunity to drunk drivers and other negligent drivers who injure members of your household.... Though we are sure that some agents may be conscientious in explaining your rights, many may not....
Several insurance agents sent copies of these letters to Commissioner Merin. He sent a copy to David Johnson, Esq., Director of the Office of Attorney Ethics, and asked Mr. Johnson to determine "if such letters violate any Supreme Court rules or provisions pertaining to the practice of law." Mr. Johnson referred the inquiry to the Committee On Attorney Advertising which, pursuant to R. 1:19A-2, has "the exclusive authority to consider requests for advisory opinions and ethics grievances concerning the compliance of advertisements and other related communications with the Supreme Court's Rules Of Professional Conduct," RPC 7.1, 7.2, 7.3(a) and (b), 7.4 and 7.5. Thereafter, Commissioner Merin again wrote to Mr. Johnson to urge him to review the material circulated by the defendants and other attorneys for "other issues beyond advertising." Commissioner Merin also explained, "[t]he letters that I forwarded to you were in support of a general request that *471 the appropriateness of such mailing be determined. I did not, and have not, asked that the actions of the individual firms be reviewed."
Ultimately, the Supreme Court Committee On Attorney Advertising determined that the letters sent by plaintiffs and other attorneys to "current and prospective clients concerning the recent changes in the automobile insurance laws.... did not constitute a violation of the Rules Of Professional Conduct governing attorney advertising [and did not] otherwise comprise unethical behavior."
Before the Supreme Court Committee on Attorney Advertising had issued its decision, a newspaper reporter asked Commissioner Merin if he had taken any action with regard to the letters. Commissioner Merin told the reporter that he had asked either the courts or the Committee On Attorney Ethics whether the conduct of the attorneys was proper. Following the Commissioner's disclosure of this information, an article appeared in the reporter's newspaper. It stated that the Commissioner had "asked the State Supreme Court's committee on advertising to check the `ethics' of law firms urging their clients not to accept a new car insurance option that would reduce premiums but limit an accident victim's right to sue for pain and suffering." The article stated that the Commissioner "questions whether such letters constitute an ethics violation," and it quoted the Commissioner as saying, "[i]t could be more than just bending the advertising rules for lawyers." Thereafter, Commissioner Merin spoke to at least two other reporters, one for another newspaper and the other for a television broadcaster, and similar stories appeared in a number of other newspapers and on television. In some of these, plaintiffs and their law firm were identified as among those that had circulated the letters.
The plaintiffs filed suit against Commissioner Merin. In seven counts, their complaint alleges that he defamed them to the press by charging them with violations of professional *472 ethics, that his complaint to the Office of Attorney Ethics was false and malicious, that he tortiously interfered with their relationships with their clients, and that he deprived them of their civil rights while acting under color of state law.
The complaint does not particularize defendant's allegedly defamatory statements to the press. The only competent evidence about those statements is contained in Commissioner Merin's deposition testimony. There he paraphrased what he had told the reporters as follows:
I had inquired of the courts as to whether or not . .. [plaintiffs' letter writing campaign] was proper.
* * * * * * * *
[I]t's just the general issue of what is the proper role for attorneys in dealing with the matter that's been legislated on as heavily as this one has.
* * * * * * * *
[The plaintiffs' conduct] presented a larger ethical issue about the propriety of lawyers giving general unsolicited advice....[[1]]
For the purpose of this appeal we assume that Commissioner Merin's letters to the Director of the Office of Attorney Ethics was equivalent to his filing a complaint about the plaintiffs' letter writing campaign with the Supreme Court's Attorney Ethics Committee, and that his statements to the communications media were tantamount to his telling them that that letter writing campaign violated the Rules of Professional Conduct or judicial decisions defining the ethical practice of law. Cf. Lawrence v. Bauer Pub. & Printing Ltd., 89 N.J. 451, 459, 446 A.2d 469, cert. den. 459 U.S. 999, 103 S.Ct. 358, 74 L.Ed.2d 395 (1982) (holding that the statement that plaintiffs "may be" charged with criminal conduct is little different from an assertion that plaintiffs have actually been charged with certain crimes).
*473 Both before the trial court and on appeal, defendant asserts that he is protected by N.J.S.A. 59:3-3[2] and similar common law immunities which protect a public official from liability for statements that he has made in good faith in the course of performing his duties. He also alleges that plaintiffs were public officials for a limited purpose, that he can therefore be liable to them only if he acted with actual malice, and that plaintiffs have failed to point to any facts from which a trier of fact could infer malice. Additionally, the defendant argues that his statements were privileged as fair comment because they were a fair report of official actions and proceedings undertaken to enforce the automobile insurance laws and because they were true or substantially true; that he is protected by the immunity which R. 1:20-11(b) accords to persons who make complaints to an ethics committee; and that his statements to the press did not violate plaintiffs' first amendment rights or interfere with their relationships with their clients.
The trial judge ruled that plaintiffs were public figures for a limited purpose and that the offending statements would therefore not expose defendant to liability unless he had uttered them with knowledge of their falsity or in reckless disregard of whether they were true or false. See Sisler v. Gannett Co., Inc., 104 N.J. 256, 279, 516 A.2d 1083 (1986); Lawrence v. Bauer Pub. & Printing, Ltd., 89 N.J. 451, 466, 446 A.2d 469 (1982). However, the judge also held that Commissioner Marin's disclosure to the press that he had complained to the Office of Attorney Ethics about plaintiffs' letter writing campaign abrogated the privilege established by R. 1:20-11(b). She ruled that there were genuine issues of fact material to whether Commissioner Merin's statements affected plaintiffs' freedom of speech, whether he had acted with "actual malice," and whether the newspaper report of his referral of plaintiffs' *474 conduct to the Office of Attorney Ethics was defamatory and had injured plaintiffs. Consequently, she denied defendant's motion for summary judgment in all respects. We granted defendant's motion for leave to appeal and now affirm in part and reverse in part.
We agree with the trial judge that R. 1:20-11(b) does not immunize defendant from the possible legal consequences of his complaining to the Office of Attorney Ethics about plaintiffs' letter writing campaign or from the possible legal consequences of his disclosing that complaint to the press. R. 1:20-11(b) states:
Grievants in ethics matters, clients in fee arbitration cases and witnesses in both ethics and fee matters shall be absolutely immune from suit, whether legal or equitable in nature, for all communications to Committees, Fee Committees, the Director, the Board, or to appropriate staff and for testimony given in ethics or fee arbitration proceedings. This immunity shall not extend to any publication or distribution of information by a grievant, client or witness that violates R. 1:20-10. [Emphasis added.]
Insofar as pertinent, R. 1:20-10 states:
Wrongful disclosure. Disclosure by any person of any information concerning a pending or completed investigation or proceeding, except as permitted by these rules, may subject that person to an action for contempt of the Supreme Court in addition to loss of any immunity provided under R. 1:20-11(b). [Emphasis added.]
In In re Hearing on Immunity for Ethics Complainants, 96 N.J. 669, 675 n. 3, 477 A.2d 339 (1984), the Supreme Court said, "[t]he Rule [R. 1:20-11b] explicitly allows a defamation suit based on a complainant's statement made in violation of the confidentiality requirement of Rule 1:20-10." Defendant's argument that his disclosure of his communication to the Office of Attorney Ethics did not nullify the privilege because neither the Supreme Court nor the Office of Attorney Ethics entered an order either holding him in contempt or suspending the privilege ignores the plain language of the applicable rules. However, contrary to plaintiffs' contention, we hold that defendant's breach of the obligation of confidentiality imposed by R. 1:20-10 abrogated only the privilege created by R. 1:20-11(b). *475 Whether he is protected by any other privilege is a separate matter which is not controlled by R. 1:20-10.
Commissioner Merin admits that his official duties did not include referring attorneys to the Office of Attorney Ethics for alleged violations of professional ethics. His communications to the Office of Attorney Ethics therefore stand on the same footing as those of any other member of the general public. Consequently, we agree with the trial judge's holding that neither defendant's complaint nor his statements to the press were shielded by N.J.S.A. 59:3-3[3] or similar common law rules which protect a public official from liability for statements that he makes in good faith in the course of performing his duties. See N.J.S.A. 59:3-14a; Burke v. Deiner, 97 N.J. 465, 472, 479 A.2d 393 (1984) (quoting Nicoletta v. North Jersey Dist. Water Supply Comm'n, 77 N.J. 145, 167-168, 390 A.2d 90 (1978)); Brayshaw v. Gelber, 232 N.J. Super. 99, 109, 556 A.2d 788 (App.Div. 1989); Hayes v. Mercer County, 217 N.J. Super. 614, 622, 526 A.2d 737 (App.Div.), certif. den. 108 N.J. 643, 532 A.2d 226 (1987); Molnar v. Star-Ledger, 193 N.J. Super. 12, 19-21, 471 A.2d 1209 (App.Div.), certif. den. 99 N.J. 162, 491 A.2d 674 (1984); Sinderbrand v. Schuster, 170 N.J. Super. 506, 509-510, 406 A.2d 1344 (Law Div. 1979).
We also agree with the trial judge that under the rule of Sisler v. Gannett Co., Inc., 104 N.J. 256, 279, 516 A.2d 1083 (1986), defendant's statements about plaintiffs were not actionable unless plaintiffs proved that he had made the statements with "actual malice." In Sisler, the plaintiff was someone who had founded a bank and had been its president for many years. A newspaper article accused him of having received large, inadequately collateralized loans from the bank. The allegation was untrue and had resulted from the reporter's misinterpretation of public records. A jury returned a verdict in the plaintiff's favor, but the Supreme Court reversed. Looking to the *476 federal cases for guidance but basing its decision on New Jersey law, the Court remanded the case for retrial according to the following rule:
... when a private person with sufficient experience, understanding and knowledge enters into a personal transaction or conducts his personal affairs in a manner that one in his position would reasonably expect implicates a legitimate public interest with an attendant risk of publicity, defamatory speech that focuses upon that public interest will not be actionable unless it has been published with actual malice.
Ibid.
In the present case, the plaintiffs' cause of action requires them to meet the "actual malice" standard to which Sisler subjects a person who has "voluntarily and presumably knowingly, risked exposure on a subject-matter of legitimate public concern." Sisler, 104 N.J. supra, at 275, 516 A.2d 1083. That standard applies regardless of whether or not the defendants are associated with the communications media. Dairy Stores, Inc. v. Sentinel Publishing Co., 104 N.J. 125, 152-153, 516 A.2d 220 (1986); Vassallo v. Bell, 221 N.J. Super. 347, 373, 534 A.2d 724 (App.Div. 1987). The plaintiffs became subject to the "actual malice" standard because, by conducting a letter writing campaign to segments of the general public in order to influence public opinion on an issue of general public interest, they exposed themselves to "an attendant risk of publicity" with the consequence that "defamatory speech that focuses upon that public interest will not be actionable unless it was published with actual malice." Sisler v. Gannett Co., Inc., supra, 104 N.J. at 279, 516 A.2d 1083; see Vassallo v. Bell, 221 N.J. Super. 347, 366-372, 534 A.2d 724 (App.Div. 1987).
In Dairy Stores, Inc. v. Sentinel Publishing Co., supra, a product disparagement case decided by the application of defamation law principles, the New Jersey Supreme Court formulated a "doctrine of fair comment" which also leads to the conclusion that in the present case plaintiffs' cause of action for defamation required them to prove that defendant had spoken to the communications media with "actual malice." The Court held in Dairy Stores, Inc. that the "doctrine of fair comment" *477 "extends to virtually all matters of legitimate public interest." Id. 104 N.J. at 141, 516 A.2d 220.[4] Expressly rejecting what it recognized was the majority view that the "fair comment privilege" extends only to statements of opinion, the Court held that "fair comment should apply not just to statements of opinion, but also to statements of fact." Id. at 147, 516 A.2d 220. The protection which the "fair comment privilege" accorded to allegations of fact, the Court ruled, could be overcome only by proof of "actual malice." Dairy Stores, Inc. defines "actual malice" for purposes of the "fair comment privilege" in the same terms as Sisler does for purposes of its standard of proof.
Sisler and Dairy Stores, Inc. hold that to prove "actual malice," a "plaintiff must establish that the publisher knew the [allegedly defamatory] statement to be false or acted in reckless disregard of its truth or falsity." Sisler, 104 N.J. at 275-276, 516 A.2d 1083 (quoting Dairy Stores, Inc. v. Sentinel Publishing Co., 104 N.J. 125, 131, 516 A.2d 220 (1986)). The "relevant test is not `whether a reasonably prudent man would have published, or would have investigated before publishing,' but `whether the defendant in fact entertained serious doubts as to the truth of his publication.'" Dairy Stores, Inc. v. Sentinel Publishing Co., supra, at 149, 516 A.2d 220 (quoting St. Amant v. Thompson, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262, 267 (1968)); cf. Lawrence v. Bauer Pub. & Printing, Ltd., 89 N.J. 451, 466, 446 A.2d 469, cert. den. 459 U.S. 999, 103 S.Ct. 358, 74 L.Ed.2d 395 (1982) (holding that, to be actionable, "recklessness in publishing material of obviously doubtful veracity must approach the level of publishing a *478 `knowing, calculated falsehood'"). To the same effect, see Vassallo v. Bell, supra, 221 N.J. Super. at 380, 534 A.2d 724, holding that to find "actual malice," the jury will have to determine that the defendant had knowledge of the falsity of what he had written or that he had recklessly disregarded information questioning what he had written.
In Brayshaw v. Gelber, 232 N.J. Super. 99, 556 A.2d 788 (App.Div. 1989), a case in which the plaintiff accused the defendant, a deputy attorney general, of defaming him by communicating to the press that a complaint before a disciplinary board had charged plaintiff with fraudulent and unethical practices, we reversed the trial court's denial of summary judgment and ordered the entry of summary judgment in favor of the defendant. We wrote:
[P]laintiff could not overcome defendant's qualified privilege simply by alleging that defendant's communications with the press were motivated by subjective "bad faith" or "malice" or by asserting that the offending articles had no basis in fact.
........
Application of the proper definition of malice, namely, actual malice in the New York Times Co. v. Sullivan [376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)] sense, would have required the trial court to determine whether there was a genuine issue of material fact so as to permit the conclusion that the defendant "`entertained serious doubts as to the truth of [the] publication.'" [Citations omitted.]
We are thoroughly convinced that plaintiff failed to meet his burden of proving that there was a genuine issue as to whether defendant knew or even "entertained serious doubts as to the truth" of the statements contained in the press articles. The record is devoid of any evidence to support a finding that the release of the information to the press was made with actual malice.... By allowing plaintiff's action to survive defendant's motion for summary judgment without plaintiff having presented clear and convincing proof of defendant's actual malice, the trial court, in effect, improperly placed upon defendant the burden of disproving actual malice.
Id. 232 N.J. Super. at 112, 114-115, 556 A.2d 788.
In the present case also, the trial judge erred by holding that there were genuine issues of fact material to the question whether plaintiffs could prove "actual malice" within the meaning of Sisler and Dairy Stores, Inc. We are cognizant that *479 "the issue of a defendant's state of mind `does not readily lend itself to summary disposition.'" Maressa v. New Jersey Monthly, 89 N.J. 176, 197 n. 10, 445 A.2d 376, cert. den. 459 U.S. 907, 103 S.Ct. 211, 74 L.Ed.2d 169 (1982), (quoting Hutchinson v. Proxmire, 443 U.S. 111, 120 n. 9, 99 S.Ct. 2675, 2680 n. 9, 61 L.Ed.2d 411 (1979)). When, however, "nothing in the record before us creates a genuine issue of material fact that any defendant knew the statements to be false or entertained serious doubts about their truth," summary judgment should be granted. Dairy Stores, Inc. v. Sentinel Publishing Co., supra, 104 N.J. at 157, 516 A.2d 220. This is such a case. There is absolutely nothing in the record from which a trier of fact could infer that when Commissioner Merin made the allegedly defamatory statements, he knew or suspected that they were untrue. Consequently, the trial judge should have granted summary judgment in favor of defendant, dismissing those claims of plaintiffs which would be defeated by their failure to prove that Commissioner Merin knew or suspected that his statements were false. Cf. Brayshaw v. Gelber, supra.
Moreover, as an additional ground for our decision, we hold that Commissioner Merin's statements to the press were "pure opinion" within the meaning of the "fair comment" rule developed in Kotlikoff v. The Community News, 89 N.J. 62, 444 A.2d 1086 (1982) and Dairy Stores, Inc. v. Sentinel Publishing Co., supra. Therefore, whether he knew or suspected that his statements were false was not material to his motion for summary judgment.
In Kotlikoff v. The Community News, supra, the allegedly defamatory statement at issue was a letter to the editor of the defendant newspaper accusing the town's mayor and tax collector of a "conspiracy" and a "huge coverup" because they refused to disclose the names of delinquent taxpayers. The Court stressed that the facts upon which the writer of the letter based his opinion were fully disclosed in the letter. Consequently, the Court held, no unstated defamatory facts were *480 implied. Reinstating the trial court's summary judgment for the defendants which had been reversed by the Appellate Division, the Supreme Court said:
Where an opinion is accompanied by its underlying nondefamatory factual basis, ... a defamation action premised upon that opinion will fail, no matter how unjustified, unreasonable or derogatory the opinion might be. This is so because readers can interpret the factual statements and decide for themselves whether the writer's opinion was justified.
Id. at 72-73, 444 A.2d 1086.
In Dairy Stores, Inc. v. Sentinel Pub. Co., supra, the New Jersey Supreme Court reiterated and extended the ruling of Kotlikoff. The Court expressly rejected what it recognized was the majority view that the "fair comment privilege" extends only to opinion. Ruling solely as a matter of New Jersey law[5], the Court held that "fair comment should apply not just *481 to statements of opinion, but also to statements of fact." Id. at 147, 516 A.2d 220. However, the Court said, "the difference between fact and opinion remains important." Adopting from Kotlikoff the definitions which that case had taken from the Restatement (Second) Torts, § 566, the Court defined "a pure opinion" as "one that is based on stated facts or facts that are known to the parties or assumed by them to exist" and a "`mixed' opinion" as "one that is not based on facts that are stated or assumed by the parties to exist." Id. 89 N.J. at 147-148, 444 A.2d 1086. Significantly for the present case, the Court held that although the protection which the "fair comment privilege" accorded to "mixed opinions" and to allegations of fact could be overcome by proof of "actual malice," "[s]tatements of opinion, as a matter of constitutional law, enjoy absolute immunity," and "expressions of `pure' opinion on matters of public concern will not give rise to an action for defamation." Id.
The Court's application of the "fair comment privilege" to the pejorative statements that were at issue in Dairy Stores, Inc. clarifies the applicability of that privilege to the present case. The plaintiff in Dairy Stores, Inc. was a manufacturer of bottled spring water. The defendants were a local newspaper, its reporter, and a laboratory which had tested the water. The offending statements were (1) that a sample bottle of the *482 plaintiff's bottled spring water did "not contain pure spring water, according to a laboratory analysis obtained by" the newspaper; (2) that "pure spring water should not contain any chlorine"; and (3) that the director of the testing laboratory could not "see how it could possibly be spring water unless the spring source was contaminated and chlorine was added at the source." Id. at 154, 516 A.2d 220. The first two statements were held to be "facts" and therefore protected by a qualified privilege which could be overcome only by proof of "actual malice." Id. The third statement, however, was held to have been made "on the basis of stated facts" and to be a "statement of `pure opinion,' entitled to absolute immunity." Id. at 155, 516 A.2d 220.
In the present case, whether or not Commissioner Merin's statements to the press constitute actionable defamation depends solely upon the content and context of those statements themselves, not upon what the newspapers and television broadcasts said in reporting them. Significantly, the only persons to whom Commissioner Merin made his statements directly were reporters who already had copies of plaintiffs' letters. The substance of what he told the reporters was no more than that he had filed a complaint against the plaintiffs because their conduct violated the Code of Professional Conduct or was otherwise unethical. The reporters to whom defendant directed his remarks therefore knew all of the pertinent facts about plaintiffs' conduct which were the basis for his characterizing that conduct, or characterizing plaintiffs themselves, as unethical  their letter writing campaign. Under these circumstances, defendant's allegedly defamatory statements were "pure opinion," based entirely upon facts that were expressly stated or necessarily understood by the persons to whom the statements were directed. Therefore, in accordance with the rule of Dairy Stores, Inc. v. Sentinel Publishing Co., supra, those statements are absolutely privileged and will not support an action for defamation, regardless of whether they were uttered with "actual malice."
*483 Our decision in the present case, like the decisions of the New Jersey Supreme Court in Sisler and Dairy Stores, Inc., is based on New Jersey law. Since we have held that Commissioner Merin's statements are shielded from liability, our law as applied in this case is at least as protective of free speech as federal law would be. We have therefore not attempted to decide whether defendant is also protected by first amendment principles. See Milkovich v. Lorain Journal Co., 497 U.S. ___, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990); Hutchinson v. Proxmire, 443 U.S. 111, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979); Wolston v. Reader's Digest Assn., Inc., 443 U.S. 157, 99 S.Ct. 2701, 61 L.Ed.2d 450 (1979); Time, Inc. v. Firestone, 424 U.S. 448, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976).
Our holding that, as a matter of New Jersey law, Commissioner Merin is protected from liability for defamation also immunizes him from liability for plaintiffs' other causes of action that, however phrased, seek to premise his liability upon his statements to the press. Cf. Dairy Stores, Inc., supra, 104 N.J. at 137, 516 A.2d 220 (holding that the same privileges apply whether the claim is analyzed as defamation or product disparagement); Binkewitz v. Allstate Ins. Co., 222 N.J. Super. 501, 515-516, 537 A.2d 723 (App.Div. 1988) (holding that the same privilege which defeats a defamation claim also defeats a claim for tortious interference). Plaintiffs, however, have also asserted a claim for malicious prosecution premised on defendant's complaint to the Attorney Ethics Committee. In the trial court, defendant sought summary judgment for that claim on the basis of the immunity established by R. 1:20-11(b). However, we have held that the trial judge was correct in her ruling that that immunity was dissipated by defendant's disclosure of his complaint to the press. No other argument directed to the legal or factual sufficiency of that cause of action has been addressed to us, and we therefore hold that no showing has been made which would justify a summary judgment dismissing that claim.
*484 The order appealed from is reversed and the case remanded to the trial court for entry of partial summary judgment in favor of defendant and against plaintiffs, dismissing all of plaintiffs' claims for relief except their claim in the nature of malicious prosecution. That claim should be disposed of in the ordinary course. We do not intend to intimate any views whatsoever about its merits except that it is not barred by R. 1:20-1(b). We do not retain jurisdiction.
NOTES
[1] This last quoted language is that of the attorney who was questioning Commissioner Merin. The defendant agreed that that was what he had told the reporters who interviewed him.
[2] N.J.S.A. 59:3-3 states, "A public employee is not liable if he acts in good faith in the execution or enforcement of any law. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment."
[3] See footnote 1, supra.
[4] As examples of the matters of public interest to which it said New Jersey courts had accorded protection under the doctrine of "fair comment," the Court cited Coleman v. Newark Morning Ledger Co., 29 N.J. 357, 382-383, 149 A.2d 193 (1959) (internal security during the McCarthy era); Hohl v. Mettler, 62 N.J. Super. 62, 66-67, 162 A.2d 128 (1960) (criticism of a proposed trailer park); Mick v. American Dental Ass'n., 49 N.J. Super. 262, 280, 282-283, 139 A.2d 570 (App.Div.), certif. den. 27 N.J. 74, 141 A.2d 318 (1958) (drinking water that was the subject of present litigation).
[5] The New Jersey Supreme Court observed that in Gertz v. Robert Welch, Inc., 418 U.S. 323, 351-52, 94 S.Ct. 2997, 3012-13, 41 L.Ed.2d 789, 811-12 (1974) the United States Supreme Court had retrenched from what appeared to be its position in Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 43, 91 S.Ct. 1811, 1819, 29 L.Ed.2d 296, 311-12 (1971), and had "declared that the actual malice test applies only to public figures or those private figures who become so involved in a particular public controversy that they become public figures for a limited range of issues." Dairy Stores, Inc., 104 N.J. at 138, 516 A.2d 220. However, the New Jersey Court declared, states might grant broader speech protection, including protection for statements about matters of public concern from which "the United States Supreme Court has withdrawn constitutional protection." Id. at 140, 516 A.2d 220. "Providing such protection," the Court said, "would be consistent with the enhanced protection we have provided to speech in other areas." Id. at 140-141, 516 A.2d 220.

The New Jersey Supreme Court was prescient in its recognition that "[a]lthough constitutional considerations have dominated defamation law in recent years, the common law provides an alternative, and potentially more stable, framework for analyzing statements about matters of public interest." Dairy Stores, Inc., 104 N.J. at 139, 516 A.2d 220. In Milkovich v. Lorain Journal Co., ___ U.S. ___, ___, 110 S.Ct. 2695, 2705, 111 L.Ed.2d 1, 17 (1990), the United States Supreme Court declared that it was a mistake to have interpreted Gertz as "intending to create a wholesale defamation exemption for anything that might be labeled `opinion....' Not only would such an interpretation be contrary to the tenor and context of the passage, but it would also ignore the fact that expressions of `opinion' may often imply an assertion of objective fact."
Despite this strong language, however, the Milkovich court interpreted Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986) as standing for a rule which is consistent with that of Dairy Stores, Inc. The United States Supreme Court said:
... we think Hepps stands for the proposition that a statement on matters of public concern must be provable as false before there can be liability under state defamation law, at least in situations ... where a media defendant is involved. Thus, unlike the statement, "In my opinion Mayor Jones is a liar," the statement, "In my opinion Mayor Jones shows his abysmal ignorance by accepting the teachings of Marx and Lenin," would not be actionable. Hepps ensures that a statement of opinion relating to matters of public concern which does not contain a probably false factual connotation will receive full constitutional protection. [Emphasis added.]
Id. ___ U.S. at ___, 110 S.Ct. at 2706, 111 L.Ed.2d at 18.