254 N.J. Super. 8 (1991)
603 A.2d 43
JOSEPH MIELE, INDIVIDUALLY AND MIELE SANITATION CO., PLAINTIFFS-RESPONDENTS,
v.
JESSE ROSENBLUM, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 2, 1991.
Decided December 31, 1991.
*9 Before PETRELLA, ASHBEY and A.M. STEIN, JJ.
Corinne M. Mullen argued the cause for appellant (Robinson Brog Leinwand Todaro & Mullen, attorneys; Corinne M. Mullen, of counsel and on the brief).
*10 Kathryn A. Gilbert argued the cause for respondents (Sakany & Gilbert, attorneys; Kathryn A. Gilbert, on the letter brief).
PER CURIAM.
By leave granted, defendant appeals from the denial of his motion for summary judgment in a libel case. We reverse.
Defendant Jesse Rosenblum was editor and publisher of a community newsletter, called the Informed Citizen In Closter (ICIC). Plaintiff Joseph Miele (for himself and on behalf of his corporation, Miele Sanitation)[1] filed a June 24, 1988 complaint which asserted that on May 31, 1988, defendant had used ICIC to libel plaintiff by publishing material misrepresentations of fact, known by defendant to be false. The complaint also said that there was a second publication on June 11, 1988.
Plaintiff demanded compensatory and punitive damages, as well as a retraction and attorneys' fees and costs. An amended complaint, dated April 4, 1989, added a second count, alleging that defendant had, with malice, published and continued to publish "facts" about plaintiff which placed plaintiff in a false light, and a third count alleging that defendant's actions caused plaintiff to lose business profits. The first count was not amended, so that neither complaint referred to the specific language alleged to be defamatory, except by reference to the two publications attached, and neither complaint referred to any publication other than these two. Plaintiff's claim that other publications were included in his cause of action rested entirely on his allegation that defendant "continue[d] to publish" articles which placed him in a false light.
The May 31, 1988 article attached to the complaint is here reprinted in its entirety:

*11 Dear Resident,
Is Closter for sale? Our elected officials and board appointees are about to make three very important decisions. Will you help!
1.  A business wants to start operations from their 5-acre Blanch Ave. tract in a residential district. Area downgrading!
2.  The new owner of the A & P property plans to add a CAR WASH and stores. Torrents of new traffic and fewer parking spaces!
3.  Last week, the mayor and council sadly voted to initiate legal negotiations leading to the sale of borough land on Railroad Ave. to the adjoining property owner, Miele Sanitation. Upon planning board approval, that Closter scavenger firm would gain 150% in land size to over 2 acres, install a baler, compactors and increase heavy hauling. Tenafly just said NO!
They even discussed a way to increase the flow of truck traffic to the industrial district, a haven of low land tax assessments.
This dumping on Closter will stop when your physical presence is noted at the following meetings. It's evident, they need help!
Jesse Rosenblum
Editor
The publication ended with a notice of public meetings. There followed a collage and a map.
The June 11, 1988 article attached to the complaint (contrary to the implication in the body of the complaint) was not a republication. It appears to be a new publication. Page one of that claimed defamation states in its entirety:
Dear Resident,
MAGIC 4 is the license plate of Mayor Rogan, whose hobby is magic.
He, the council, and Miele Sanitation are trying hard to conjure up an agreement of sale for borough land adjoining Miele's Railroad Avenue property, yet expecting to prevent expansion of the scavenging operations. This would be a startling feat of legerdemain considering all the other borough acts that somehow have failed to materialize.
Behind the scenes, however, the regulatory agencies are `pulling the wires' for a super transfer station in Closter if its residents remain hypnotized.
Daredevil risks are unnecessary. Simply don't sell this land buffer!
Closter Zoning Ordinance 113-32 strictly prohibits every phase of the private garbage business, including transfer stations.
For whom is this magic? Our elected officials may believe in illusions, but you can show them that you are for real.
Jesse Rosenblum
Editor
This publication also ended with a notice of public meetings.
The second page of this asserted libel is a collage of articles from other publications, including letters from citizens. On one *12 side of the collage is a squib, which says: "Suggestions: [a]ttend council meets. Question our elected officials. Visit Railroad Ave.," apparently Miele's place of business.[2]
The record indicates that there were other articles which plaintiff wished include in the litigation. As we have noted, those articles were never pleaded and, respecting a majority of them, the statute of limitations had passed at the time of the May 1991 summary judgment motion hearing. The trial court ruled that the failure to specify the asserted additional defamations did not trigger the application of the statute of limitations to them.[3]
Attached to the appellate record and, presumably, to the trial record, is a series of documents. There are collages, maps, and miscellaneous other appendices. What plaintiff, by attaching a map or collage, asserted concerning the "defamation" included therein is not clear. Whatever it was, it was not pleaded.
In permitting Miele to avoid the statute concerning defamatory statements not pleaded, the judge inferentially relied upon the one statement in the amended complaint which referred to Rosenblum's continued publication of articles which placed plaintiff in a false light. As we have noted, there was no reference in the amended complaint, however, to any new publication being added to plaintiff's libel count, and no new attachments to the complaint.
N.J.S.A. 2A:14-3 provides that "Every action at law for libel or slander shall be commenced within 1 year next after the publication of the alleged libel or slander." That statute has been strictly construed. See Lawrence v. Bauer Publishing and Printing, Ltd., 154 N.J. Super. 271, 282, 381 A.2d 358 *13 (App.Div. 1977) (Ard, J.A.D., dissenting), rev'd on dissenting opinion, 78 N.J. 371, 396 A.2d 569 (1979).
In the context of an insurer's duty to defend, and without passing on the merits of the cause, we have recently emphasized the necessity for specification concerning the content of asserted defamation.
In the case of a complaint charging defamation, the plaintiff must plead facts sufficient to identify the defamatory words, their utterer and the fact of their publication. Zoneraich v. Overlook Hosp., 212 N.J. Super. 83, 101, 514 A.2d 53 (App.Div. 1986), certif. den. 107 N.J. 32, 526 A.2d 126 (1986). A vague conclusory allegation is not enough. Ibid.; see also Kotok Building v. Charvine Co., 183 N.J. Super. 101, 105, 443 A.2d 260 (Law Div. 1981).
Voorhees v. Preferred Mut. Ins. Co., 246 N.J. Super. 564, 570, 588 A.2d 417 (App.Div.), certif. den., 126 N.J. 340, 598 A.2d 897 (1991).
In Printing Mart v. Sharp Electronics, 116 N.J. 739, 769, 563 A.2d 31 (1989), our Supreme Court found that plaintiff's libel claim was stated with "sufficient particularity to carry a cause of action ...," respecting that part of a complaint which said that defendant was "ripping off" a competitor, that plaintiffs "were not qualified" to do the work, with their prices "unreasonable" and their work "inadequate." While some of the words did not impute a crime, they nonetheless could affect plaintiff's business. Id. at 767, 563 A.2d 31. On the other hand, the Court ruled that saying defendant could "beat" plaintiff's prices, or that the competitor was a "mere convenience" and had never been the "lowest bidder," absent pleading additional facts, could not convey defamatory meaning, and were subject to summary judgment. Id.
In Zoneraich v. Overlook Hospital, 212 N.J. Super. 83, 101, 514 A.2d 53 (App.Div.), certif. den., 107 N.J. 32, 526 A.2d 126 (1986), cited by the Voorhees court, we found summary judgment dismissing plaintiff's libel claim to have been properly granted where a one-count complaint charged merely that
defendants have ... defamed [plaintiff] and wilfully, unlawfully and maliciously exposed her to public ridicule. No other part to the complaint alleges when, where, by which defendants and by what words, written or oral, plaintiff was *14 defamed. A plenitude of written and oral communications are attributed by the complaint to various defendants, and most are labeled false.
Id.
In Zoneraich, we also said that discovery may not be used to bolster a defamation cause of action. Id. at 102, 514 A.2d 53.
The trial court distinguished Zoneraich, saying:
Rosenblum clearly identified the subject of his articles as Mr. Miele. He has printed and admitted, actually candidly, that he's the utterer of the materials in the newsletter and that he himself published these articles. And publications, I don't think we're arguing[] that it wasn't published as defined by tort laws that the words are communicated to third parties and it's clearly satisfied by the fact that the Defendant admitted mailing these to at least 300 residents ... exclusive of ... the Plaintiff.
That ruling did not address the consequences of plaintiff's failure to specify in either complaint the defamatory words published on unknown dates.[4]
We are satisfied that plaintiff's complaint for libel, having failed to specify any but the first two articles, limited plaintiff's cause of action to them, and rendered any future complaint subject to the relevant statute of limitations. See Printing Mart, 116 N.J. at 772, 563 A.2d 31.
We now turn our attention to the motion for summary judgment as it concerns the two articles specified in the original amended complaint. The judge denied defendant's motion for summary judgment as to all counts.
We are first satisfied that neither article satisfied a false light claim. Our Supreme Court has said:
The publicized material in a false-light claim must constitute a "major misrepresentation of [plaintiff's] character, history, activities or beliefs." ... Thus, there can be no recovery for false-light invasion of privacy unless it is known that the publicity at issue was of a character "highly offensive to a reasonable person." ... This protection of privacy does not extend to the *15 "hypersensitive person;" the material publicized "must be something that would be objectionable to the ordinary person under the circumstances." ...
As with defamation claims, it is for the court first to determine whether the criticized matter is capable of the meaning assigned to it by plaintiff, and whether that meaning is highly offensive to a reasonable person.... In making this determination, the court "should not consider words or elements in isolation, but should view them in the context of the whole article to determine if they constitute an invasion of privacy." [Citations omitted; brackets in original].
Romaine v. Kallinger, 109 N.J. 282, 295, 537 A.2d 284 (1988). We have observed that the "highly offensive" quality of the asserted defamation in this case is nowhere specified, and we can find none.
In Romaine the statement was that plaintiff knew a junkie who was doing time in prison. The Court found that the statement could not be interpreted to mean that plaintiff engaged in any drug-related activity, nor to have any other defamatory potential. Id. at 291, 537 A.2d 284. The Court examined the context of the entire statement pleaded and found nothing in the context to supply such a meaning. Id. at 292, 537 A.2d 284.
As the Court in Romaine noted respecting the defamation count, it is for the trial judge to determine whether each statement complained of was capable of being construed as defamatory "according to the fair and natural meaning which will be given it by reasonable persons of ordinary intelligence." Id. at 290, 537 A.2d 284, quoting Herrmann v. Newark Morning Ledger Co., 48 N.J. Super. 420, 431, 138 A.2d 61 (App.Div.), aff'd on reh'g, 49 N.J. Super. 551, 140 A.2d 529 (App.Div. 1958). "A defamatory meaning will be found only if the language asserts or implies a statement of fact which is damaging to the reputation." Lutz v. Royal Ins. Co. of America, 245 N.J. Super. 480, 492, 586 A.2d 278 (App.Div. 1991). In Lutz, we characterized words such as "abusive, vulgar and offensive" as susceptible *16 of defamatory meaning, id. at 493, 586 A.2d 278.[5]
In Kotlikoff v. The Community News, 89 N.J. 62, 72-73, 444 A.2d 1086 (1982), a small newspaper published a letter to the editor suggesting that the mayor "`might be engaged in a huge coverup.'" Id. at 65, 444 A.2d 1086. The Supreme Court held the language not to be capable of a defamatory construction. In Kotlikoff, the Court cited with approval Greenbelt Cooperative Publ. Ass'n, Inc. v. Bresler, 398 U.S. 6, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970). There the publishers of a local newspaper published a statement made at a city council meeting that a local real estate developer was "blackmailing" the city in connection with pending negotiations. No defamation was found. See also Karnell v. Campbell, 206 N.J. Super. 81, 501 A.2d 1029 (App.Div. 1985).
Giving plaintiff's complaint every indulgence, he asserted a May 1988 misstatement to accord with plaintiff's attached request for retraction. That request said that defendant had falsely published that the proposed land exchange between plaintiff and the municipality involved "the extension of plaintiff's compacting, baling, or hauling activities." The June 1988 article refers to municipal authorities and Miele "conjuring up" an agreement. The article characterized the municipality, not Miele, as capable of "legerdemain," although the article also acknowledged that the municipality expected to prevent Miele's expansion. We can find no reference in the record to the language in the June 1988 publication which assertedly defamed plaintiff.
We recognize that the trial judge found that the record before him supported the inference that Rosenblum recklessly disregarded the truth or falsity of some of his statements, with particular reference to statements other than those specified in *17 the complaint. It is a fair inference that the judge found evidence in the record that defendant by his publications was guilty of malice in both the libel sense and the motivation sense. We also recognize that statements other than the defamation charged may form part of a cause of action by making ambiguous statements defamatory, provided they are part of the pleading, Printing Mart, supra, 116 N.J. at 767, 563 A.2d 31, but we cannot find anything in the complaint to justify a finding that any statement in the two publications pleaded was defamatory as to Miele. See Karnell v. Campbell, supra.
Moreover, at best, the statement that plaintiff was planning a business expansion (which plaintiff denied) was an opinion. The Kotlikoff Court also said,
Where an opinion is accompanied by its underlying nondefamatory factual basis, ... a defamation action premised upon that opinion will fail, no matter how unjustified, unreasonable or derogatory the opinion might be. This is so because readers can interpret the factual statements and decide for themselves whether the writer's opinion was justified. [Citations omitted].
In Lutz v. Royal Ins. Co. of America, we said:
In Kotlikoff, the Court held that under the United States Supreme Court's opinion in Gertz v. Welch, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), the common-law "fair comment" privilege had "been replaced by a broader protection." Kotlikoff, supra, 89 N.J. at 68-69, 444 A.2d 1086. That "broader protection" was articulated as a complete privilege for expressions of "`pure' opinion on matters of public concern." Id. at 69, 444 A.2d 1086. "Pure opinion" was defined as opinion where the "maker of the comment does not spell out the alleged facts on which the opinion is based but both parties to the communication know the facts or assume their existence and the statement of opinion is obviously based on those assumed facts as justification for the opinion." Id. Where a statement is an opinion in form or context but is "based on facts about the plaintiff or his conduct that have neither been stated by the defendant nor assumed to exist by the parties to the communication", the statement is actionable if it implies the allegation of undisclosed defamatory facts as the basis of the opinion. Id.

245 N.J. Super. at 494, 586 A.2d 278.
Assuming that any words in the two publications were capable of being construed as damaging plaintiff's reputation, the writer urged the reader to check by attending the public meeting. It is questionable that such a suggestion did not negate any "allegation of undisclosed defamatory facts." Id.
*18 Because we do not find defamation to have been pleaded, we need not concern ourselves with whether plaintiff was a private citizen. See Sisler v. Gannett Co., Inc., 104 N.J. 256, 264, 516 A.2d 1083 (1986), appeal after remand, 222 N.J. Super. 153, 536 A.2d 299 (App.Div. 1987), certif. den., 110 N.J. 304, 540 A.2d 1283 (1988). The trial court found that plaintiff was a private citizen respecting some statements, and a public citizen for others. Because the judge referred to depositions, the record is unclear as to what statement or article fell into which category. Plaintiff was the prospective purchaser of publicly owned real property and the principal of a highly regulated neighboring business. That the matter was one of public concern is not disputed.
We add merely that the Kotlikoff court referred to the Restatement (Second) of Torts § 611, comment a (1977), where it is reported that a privilege exists for publication of defamation concerning a report of official action or proceeding dealing with a matter of public concern, even when the publisher knows the defamatory statement is false. Kotlikoff, supra, 89 N.J. at 69 n. 2, 444 A.2d 1086.
As in Kotlikoff, the publications in question here may fairly be characterized as speech triggering the very essence of First Amendment protection. ICIC was a small newspaper, directed to a voting public in a small democracy, and urging the public to appear and to challenge authorities concerning contemplated municipal action. It may be that the author was badly motivated, but the chilling effect of placing such publication at risk of litigation such as this cannot be overstated. As our Supreme Court has said: "The threat of prolonged and expensive litigation has a real potential for chilling journalistic criticism and comment upon public figures and public affairs." Kotlikoff, supra, 89 N.J. at 67, 444 A.2d 1086. See Karnell v. Campbell, 206 N.J. Super. at 94-95, 501 A.2d 1029.
Reversed.
NOTES
[1] We use "plaintiff" to refer to both plaintiffs.
[2] There are discrepancies in these appendices.
[3] The judge appeared to take his specific references from depositions not in the appellate record.
[4] Cassidy v. Merin, 244 N.J. Super. 466, 475-76, 582 A.2d 1039 (App.Div. 1990), is not to the contrary. Although plaintiffs there "did not particularize defendant's allegedly defamatory statements to the press," the complaint specified that defendant charged plaintiffs "with violations of professional ethics."
[5] In Lutz, we also said that, because the words were not uttered on a matter of public concern, the "`pure' opinion standard of Gertz" did not protect the private defendants, 245 N.J. Super. at 496, 586 A.2d 278.