687 A.2d 1022

STEVEN F. MOLIN, PLAINTIFF–APPELLANT, v. THE TRENTONIAN, DAVE GOLDINER, MARK WALIGORE AND PHYLLIS PLITCH, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued October 22, 1996—Decided February 3, 1997.

154

Before Judges D'ANNUNZIO, WEFING and NEWMAN.[1]

*Steven L. Sacks–Wilner,* argued the cause, for appellant (Mr. Molin, on the pro se brief).

*Gerald A. Hughes,* argued the cause, for respondents (*Hughes & Hendrix,* attorneys; *Mr. Hughes,* on the brief).

The opinion of the court was delivered by

NEWMAN, J.A.D.

Plaintiff Steven F. Molin appeals from the grant of a summary judgment, dismissing his complaint for defamation. We affirm.

Plaintiff was arrested for stalking on February 13, 1993. The Trentonian published an article reporting plaintiff's arrest and the surrounding circumstances as set forth in the police report. The article was published on February 17, 1993. On August 1, 1993, The Trentonian published another article about stalking generally and included reference to plaintiff's case. In that article, The Trentonian reported that plaintiff's stalking charge had been downgraded to harassment by the prosecutor and returned to the municipal court. The charge was eventually dismissed in January, 1995, but the dismissal was not reported by The Trentonian.

Plaintiff instituted this action against defendants The Trentonian, Dave Goldiner (by-line on the February 17, 1993 article), Mark Waligore (an assistant editor) and Phyllis Plitch (by-line on the August 1, 1993 article), alleging that the two articles published about the February 13, 1993 arrest were defamatory. Plaintiff alleges that he has "never, at any time, been found guilty of the crime of stalking...."

On the day of his arrest, plaintiff had been to the home of Carol Arroyo to drop off Valentine's Day presents including flowers and a cherry cheese cake. Molin first met Ms. Arroyo in 1990 at a

---

[1] Judge Wefing did not participate in oral argument but with the consent of the parties participated in the disposition of the appeal.

stationery store where she worked in Philadelphia. He said that he gave Arroyo gifts in the past which he would drop off at her workplace. He also testified that he used to walk Arroyo to the PATCO line after she was finished with work. He said that he went out on dates with her although on at least one occasion she refused and told plaintiff she had other arrangements. Arroyo's markedly different version of the past year's events was contained in the police report and partially reported in the article.

In granting summary judgment, the motion judge concluded that the plaintiff was unable to prove the statements in the articles false. He also determined that the subject, one of the first arrests under the stalking statute, was a matter of legitimate public interest to which the fair comment privilege applied, citing *Dairy Stores, Inc. v. Sentinel Publishing Co., Inc.*, 104 *N.J.* 125, 516 *A.*2d 220 (1986). The motion judge also found that plaintiff failed to show that these articles were printed with actual malice.

On appeal, plaintiff contends that the motion judge erred in granting summary judgment. Plaintiff refers to the headline appearing on the front page of the February 13, 1993 edition of The Trentonian which read "STALKER'S ARREST ENDS YEAR OF TERROR." Plaintiff contends that through the headline The Trentonian reported the events in a false and detrimental way, instilling fear in the public in an effort to sell newspapers and sensationalize the news. He asserts that he was not found guilty of the crime of stalking, but was only an alleged stalker, and he was not portrayed that way in the headline.

The threshold issue in any defamation action is whether the statement at issue is reasonably susceptible of a defamatory meaning; that is, whether it is both false and injurious. *Romaine v. Kallinger*, 109 *N.J.* 282, 289, 537 *A.*2d 284 (1988). This question is to be decided by the court. *See Kotlikoff v. The Community News*, 89 *N.J.* 62, 67, 444 *A.*2d 1086 (1982); *Lawrence v. Bauer Publishing & Printing Ltd.*, 89 *N.J.* 451, 459, 446 *A.*2d 469, *cert. denied*, 459 *U.S.* 999, 103 *S.Ct.* 358, 74 *L.Ed.*2d 395 (1982); *Karnell v. Campbell*, 206 *N.J.Super.* 81, 88, 501 *A.*2d 1029 (App.Div.1985).

In making this determination, we must evaluate the language in question "according to the fair and natural meaning which would be given it by reasonable persons of ordinary intelligence." *Herrmann v. Newark Morning Ledger, Co.*, 48 *N.J.Super.* 420, 431, 138 *A.*2d 61 (App.Div.), *aff'd on rehearing*, 49 *N.J.Super.* 551, 140 *A.*2d 529 (App.Div.1958). In assessing the language, we must view the publication as a whole and consider particularly the context in which the statement was made. *Romaine v. Kallinger*, *supra*, 109 *N.J.* at 290, 537 *A.*2d 284; *Molnar v. The Star–Ledger*, 193 *N.J.Super.* 12, 18, 471 *A.*2d 1209 (App.Div.1984).

Plaintiff would have us separate the headline from the remainder of the article to determine whether the headline presented plaintiff in a false light. However, the majority of jurisdictions support the rule that headlines are to be construed in conjunction with their accompanying articles. *Fairbanks Publishing Co. v. Pitka*, 376 *P.*2d 190 (Alaska 1962); *Floyd v. Atlanta Newspapers, Inc.*, 102 *Ga.App.* 840, 117 *S.E.*2d 906 (1960); *Ledger–Enquirer Co. v. Brown*, 214 *Ga.* 422, 105 *S.E.*2d 229 (1958); *Cook v. Atlanta Newspapers, Inc.*, 98 *Ga.App.* 818, 107 *S.E.*2d 260, 261 (1959) ("In construing a newspaper article, the headline must be considered as an integral part thereof."); *Fernandes v. Tenbruggencate*, 65 *Haw.* 226, 649 *P.*2d 1144, 1148 (1982) (following the majority rule that "headlines are generally to be construed in conjunction with their accompanying articles."); *Reed v. Albanese*, 78 *Ill.App.*2d 53, 223 *N.E.*2d 419 (1966); *Cochran v. Indianapolis Newspapers, Inc.*, 175 *Ind.App.* 548, 372 *N.E.*2d 1211, 1217 (1978) (A determination of whether an article implied a defamatory message "necessitates that the whole of the publication be considered.... The place and position of an item in a publication are to be considered as are the headlines of the articles.") (citations omitted); *Steenson v. Wallace*, 144 *Kan.* 730, 62 *P.*2d 907 (1936); *Mulina v. Item Co., Inc.*, 217 *La.* 842, 47 *So.*2d 560 (1950); *Cross v. Guy Gannett Publishing Co.*, 151 *Me.* 491, 121 *A.*2d 355 (1956); *Grossman v. Globe–Democrat Pub. Co.*, 347 *Mo.* 869, 149 *S.W.*2d 362 (1941); *Painter v. E.W. Scripps Co.*, 104 *Ohio App.* 237, 148 *N.E.*2d 503 (1957); *Bray v. Providence Journal Co.*, 101 *R.I.* 111, 220 *A.*2d

531, 535 (1966) ("(I)n considering whether the article was defamatory of plaintiff, both the headline and the body of the article were to be considered as one document."); *Ross v. Columbia Newspapers, Inc.*, 266 S.C. 75, 221 S.E.2d 770 (1976); Donald M. Zupanec, Annotation, *Libel by Newspaper Headlines*, 95 A.L.R.3d 660 (1979); *contra Las Vegas Sun, Inc. v. Franklin*, 74 Nev. 282, 329 P.2d 867, 870 (1958) (holding that a headline may be construed apart from its accompanying article since public frequently reads only the headline); *but cf. Burgess v. Reformer Publishing Corp.*, 146 Vt. 612, 508 A.2d 1359, 1363 (1986) (holding that "a defamatory headline is actionable even if the matter following is not, unless the headline is a fair index of the accurate article with which plaintiff appears.... [I]n determining whether a headline fairly indicates the substance of the matter to which it refers, the headline and article must be considered together.") (citing *Schermerhorn v. Rosenberg*, 73 A.D.2d 276, 426 N.Y.S.2d 274 (N.Y.App.Div.1980)); *Landon v. Watkins*, 61 Minn. 137, 63 N.W. 615, 617 (1895) ("Headlines are an important part of the publication, and cannot be disregarded, for they often render a publication libelous on its face which without them might not necessarily be so.").

The general approach of our courts has been to view alleged defamatory language in the context of the entire publication in which it appears. *E.g., Romaine v. Kallinger, supra*, 109 N.J. at 290, 537 A.2d 284. We see no reason to abandon this principle when considering language which appears in an article's headline. Were we to create a different standard applying only to headlines, we would be accepting that headlines wield more influence than the more substantive body of the article. Evidence of that has not been placed before us. In the absence of such evidence, we hold that headlines should generally be read in conjunction with the articles that follow.

Here, the headline states that the stalker has been arrested, but there is a photo of plaintiff next to the headline with the word "CHARGED" and plaintiff's name Steve Molin under the

photo. There is no likelihood that a reasonable person could interpret that plaintiff has been anything but arrested and charged for stalking. The article itself reinforces that conclusion reporting the circumstances under which the arrest took place, where it occurred and what plaintiff had done in order to prompt being arrested. In the article, plaintiff is referred to as the "alleged stalker." The news account indicates that plaintiff was being held on bail, and that this charge was brought pursuant to the recently enacted anti-stalking law that went into effect January 3, 1993. The information contained in the article was largely drawn from the six-page police report which details the events of the prior year based on an interview with the victim culminating in the February 13, 1993 incident that led to plaintiff's arrest. The "year of terror" reflected in the article was mirrored in the police report.

Neither the article nor headline, read in context, are false. Plaintiff was arrested for stalking. He admits that he was so arrested. While a headline may highlight the gist of the article in much bolder print and capital letters, that does not of itself provide a basis for a defamation action. Indeed, there was nothing false as to plaintiff's status as an arrestee for the crime of stalking.

We further note that the status of plaintiff's charge as downgraded to harassment was reported in a general article on stalking that appeared on August 1, 1993. While The Trentonian could not constitutionally be required to publish the information that plaintiff's charge had been downgraded, the plaintiff did receive publication of the reduced charge. He thus received more than what could be constitutionally compelled.

We are satisfied that the articles appearing on February 17, 1993 and August 1, 1993 reported facts surrounding the arrest which were not false. The trial judge correctly followed the trilogy of decisions in *Kotlikoff v. The Community News, supra, Maressa v. New Jersey Monthly,* 89 *N.J.* 176, 445 *A.*2d 376, *cert. denied,* 459 *U.S.* 907, 103 *S.Ct.* 211, 74 *L.Ed.*2d 169 (1982), and

*Lawrence v. Bauer Publishing & Printing, Ltd., supra,* which encouraged expeditious disposition where possible in libel cases so that the press freedom would not be chilled by the attendant cost of and delays in litigation. *Brill v. The Guardian Life Ins. Co.,* 142 *N.J.* 520, 541, 666 *A.*2d 146 (1995) further "encourage[d] trial courts not to refrain from granting summary judgment when the proper circumstances present themselves." The circumstances here were proper for summary judgment disposition.

Affirmed.